J-A30008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| UPSILON CHAPTER, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREEK HOUSING SERVICES, INC. | : | |
| AND MARK MALONEY | : | |
| | : | |
| | : | No. 564 MDA 2019 |
| Appellants | : | |

Appeal from the Order Entered March 29, 2019
In the Court of Common Pleas of Centre County Civil Division at No(s):
2016-4487

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:            **FILED: NOVEMBER 19, 2019**

Appellants, Greek Housing Services, Inc. ("Greek Housing") and Mark Maloney,[1] appeal from the March 29, 2019 Order denying reconsideration of its January 25, 2019 Order compelling the production Appellants' 2016 and 2017 accounting records, in their entirety, in their native QuickBooks format. We quash this appeal as interlocutory.

In 2004, Appellant and Appellee, Upsilon Chapter, Inc., entered into a limited partnership agreement, forming 328 Fairmount, L.P. ("Fairmount"). Appellee holds a 19 percent ownership interest in Fairmount, Maloney holds

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Maloney is the sole owner of Greek Housing Services, Inc.  Relevantly, Maloney has interests in other real estate-related businesses also located in the State College area including Half Moon Land Company, Maloney & Associates, and MCM Property Group.

an 80 percent ownership interest, and Greek Housing, which Maloney controls entirely, holds a 1 percent interest. Greek Housing acts as the general partner of Fairmount. The parties intended that Fairmount own and manage the fraternity house occupied by Appellee, a fraternity, specifically including leasing the house to fraternity members.

Appellee discovered, *inter alia*, that Appellant Greek Housing improperly handled the finances of Fairmount, including by making an inappropriate loan to another entity belonging to Maloney, and that Greek Housing and Maloney took tangible property belonging to Appellee and its members.

Thus, on December 22, 2017, Appellee filed an Amended Complaint raising claims of Breach of Fiduciary Duty, Breach of Contract, Violation of the Uniform Fraudulent Transfer Act ("UFTA"),[2] Fraud, Conversion, and an Action for Accounting.[3] Appellee alleged that Greek Housing is an alter-ego of Maloney and that Appellants engaged in self-dealing by funneling hundreds of thousands of dollars from Fairmount to third-party entities owned by Maloney, through the use of promissory notes. Amended Complaint, 12/22/17, ¶ 41. Appellee alleged that "[t]he [p]romissory [n]otes were issued on behalf of [Greek Housing] and other third[-]party entities controlled by Maloney, reflecting purported indebtedness to [Fairmount] for hundreds of thousands of dollars . . . with Maloney signing as both lender and borrower." *Id.* at ¶¶

---

[2] **See** 12 Pa.C.S. § 5101, *et seq*.

[3] Upsilon Chapter, Inc. filed the Amended Complaint in its own right as Fairmount's minority partner and derivatively on Fairmount's behalf.

42-45, 47. Appellee asserts that it has never identified any legitimate business purpose relating to Fairmount's real estate leasing business for "lending" money to third-parties, Greek Housing, "Maloney + Associates," and "Half Moon Land Co," all of which Maloney owns, controls, and personally benefits from. *See id*. at 48-49.

During the course of litigation, Appellee has sought discovery of Appellants' financial information, particularly as it pertains to Greek Housing's operations and the operations of Fairmount. In particular, Appellee sought:

> All accounting records from 2004 through the present in your custody or control pertaining to:
> a. Mark Maloney;
> b. Greek Housing Services;
> c. Half Moon Land Co.;
> d. Maloney & Associates;
> e. MCM Property Management Group.

Document Request, 1/27/17, ¶ 5.

On March 31, 2017, Appellants produced responses to Appellee's written discovery requests, which included some of Greek Housing's records. Appellants did not include information that Appellants regarded as proprietary or financial information of the Maloney-controlled non-parties named in the Amended Complaint.

On December 15, 2017, Appellee filed a Motion to Compel discovery. On February 7, 2018, the court ordered, *inter alia*, that Appellants "are not

compelled to produce information or documentation concerning non[-]parties except [Fairmount.]"  Order, 2/7/18, ¶ 3.

On September 28, 2018, Appellee filed a Motion to Compel Discovery and Enforce Prior Order.  On November 1, 2018, the trial court entered a Stipulated Order disposing of Appellee's Motion.  A dispute arose, however, between the parties as to the meaning of the Stipulated Order, resulting in Appellee filing, on November 20, 2018, a Motion for Discovery Sanctions.  On January 25, 2019, the trial court entered an Order directing Appellants to produce the entirety of Greek Housing's financial records.  The January 25, 2019 Order did not contain the exception the court included in its earlier Order, which excluded production of the financial records of the Maloney-controlled non-parties.

On February 12, 2019, Appellants filed a Motion for Reconsideration of the January 25, 2019 Order, which the trial court expressly granted on February 26, 2019.  On March 29, 2019, the trial court affirmed its January 25, 2019 Order.  This timely appeal followed.

Appellants raise the following issues on appeal:

1. Whether[] the financial and accounting records for [Greek Housing] contain proprietary information, trade secrets, and other materials that fall outside the scope of lawful discovery[?]

2. Whether Appellee may properly obtain, for specified years, all financial and accounting records for Appellants[?]

Appellants' Brief at 4.

- 4 -

Before we address the merits of Appellants' claims, we must determine whether the trial court's order is appealable. ***In re Miscin***, 885 A.2d 558, 560-61 (Pa. Super. 2005). "The question of the appealability of an order goes directly to the jurisdiction of the Court asked to review the order." ***Moyer v. Gresh***, 904 A.2d 958, 963 (Pa. Super. 2006) (citation omitted).

Generally, "unless otherwise permitted by statute, only appeals from final orders are subject to appellate review." ***Commonwealth v. Sartin***, 708 A.2d 121, 122 (Pa. Super. 1998) (citation omitted). In relevant part, Pennsylvania Rule of Appellate Procedure 341 defines a "final order" as any order that "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1).[4]

The discovery Order at issue here is not a final order as it does not dispose of all claims and of all parties, nor is it appealable as of right pursuant to Pa.R.A.P. 311.[5] Appellants did not ask for or receive permission to appeal the Order pursuant to Pa.R.A.P. 312.[6] Thus, the question before this Court is whether the Order in this case is appealable under the collateral order doctrine. ***See*** Pa.R.A.P. 313.

_____

[4] Rule 341 also defines a "final order" as any order "entered as a final order pursuant to [Pa.R.A.P. 341(c)]." Pa.R.A.P. 341(b)(3).

[5] Pa.R.A.P. 311 enumerates those kinds of orders that are, despite being interlocutory, appealable as of right. Pa.R.A.P. 311. Discovery orders are not included in the enumeration of orders recognized as interlocutory but appealable as of right.

[6] Pa.R.A.P. 312 provides for appeals from interlocutory orders by permission.

Pennsylvania Rule of Appellate Procedure 313 defines a collateral order as one that: "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." *In re Bridgeport Fire Litigation*, 51 A.3d 224, 230 n.8 (Pa. Super. 2012) (citation omitted); Pa.R.A.P. 313(b). Our Supreme Court has emphasized that:

> the collateral order doctrine is a specialized, practical application of the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

*Melvin v. Doe*, 836 A.2d 42, 46-47 (Pa. 2003) (internal citations omitted).

"A discovery order is collateral only when it is separate and distinct from the underlying cause of action." *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1056 (Pa. Super. 2008) (citing *Feldman v. Ide*, 915 A.2d 1208, 1211 (Pa. Super. 2007)). An order is "separable" from the main cause of action if it is capable of review without considering the underlying merits of the case. *See Ben v. Schwartz*, 729 A.2d 547, 551-52 (Pa. 1999) (concluding that the Bureau of Professional and Occupational Affairs' claims of privilege with respect to its investigative file were analytically separate from the underlying claim of dental malpractice). Our Supreme Court has explained that, "although [the Supreme Court will] tolerate a degree of interrelatedness between merits issues and the question sought to be raised in the interlocutory appeal, the claim must

nevertheless be conceptually distinct from the merits of plaintiff's claim." ***Commonwealth v. Blystone***, 119 A.3d 306, 312 (Pa. 2015) (internal quotations and citations omitted).

As noted above, Appellee has claimed that Maloney, acting as an alter-ego, fraudulently transferred money from Fairmount to entities controlled by him, including the non-party entities named in Appellee's Amended Complaint, to the detriment of Appellee, a minority partner in Fairmount. The trial court's January 25, 2019 Order compelled Appellants to produce the financial information of the non-party entities to which it alleges Maloney fraudulently transferred money.

Appellants baldly assert that this Order compels production of confidential, proprietary, and trade secret information, and is, therefore, a collateral order. Appellants' Brief at 19-20. They also aver that the question of whether the documents are "outside the scope of legal discovery" is separable from the merits of the claims raised in Appellee's Amended Complaint because "[w]hether Greek Housing and [] Maloney's accounting information contains confidential and proprietary information has no bearing on [Appellee's] allegations." ***Id.*** at 18, 22.

Appellants have not cited to any case law to support their bald claim that the financial information of the non-parties that the court ordered Appellants to produce is proprietary or contains trade secrets. Their attempt to label financial information as something "conceptually distinct from the merits" of Appellee's claim is disingenuous as Appellee's claims allege, *inter*

*alia*, the fraudulent transfer of funds to the Maloney-controlled non-parties. Moreover, Appellants have failed to demonstrate that this Court could consider the propriety of the discovery ordered here without consideration of Appellee's underlying claims.

Our review indicates that an analysis of the propriety of the court's discovery Order would require an analysis of the merits of the underlying dispute. Thus, we cannot conclude that the January 25, 2019 Order is separable from and collateral to the main cause of action.

Because Appellants have failed to meet the first and second elements of the collateral order doctrine, we quash this appeal as interlocutory.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2019